## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANASTASIOS [TOMMY] KALOMIRIS, | : : : | CIVIL ACTION NO. 1:08-CV-0539 |
| | : | (Judge Conner) |
| Plaintiff | : : | |
| v. | : : | |
| THE MONROE COUNTY SYNDICATE, ELMER D. CHRISTINE, JR., DEBBY YORK, JENNIFER FORD, JENNA FIORENTINO, JODI HAZEN, CHARLES HAZEN, KERRY KNAPP, JACKIE WENTZEL, ROBERT CUVO, JR., KARRI DODSON, MICHAEL R. MUTH, MARK MATTHEWS, WILLIAM KOEHLER, ROBERT LAUDENSLAGER, RICHARD H. SALTER, III, MARTHA MILLER, JOSEPH, MILLER, JEFF KNITTER, ROBIN COSTENBADEN, LINDA WALLACH MILLER, CHRISTOPHER J. O'DONNELL, and GEORGE WARDEN, | : : : : : : : : : : : : : : : : : : : : : | |
| Defendants | : | |

## MEMORANDUM

*Pro se* plaintiff Anastasios Kalomiris ("Kalomiris") brings the instant action, alleging numerous racketeering and civil rights violations arising from his arrest and prosecution for disorderly conduct on two occasions in the spring of 2006. Among defendants are residents, public officials, and community members of the greater East Stroudsburg area of Monroe County, Pennsylvania. Defendants have collectively filed six motions to dismiss (Docs. 9, 11, 14, 16, 18, 24) the complaint on

various procedural and substantive grounds.  For the reasons that follow,

Kalomiris's claims against the moving defendant will be dismissed, and he will be

permitted to file an amended complaint against a limited number of defendants.

## I.    **Factual Background**[1]

The alleged infringements of Kalomiris's rights arise from two incidents that

occurred at Penelope's Diner, located in Monroe County, on March 17 and May 14,

2006.[2]  (Doc. 1 ¶¶ 9, 20.)[3]  Kalomiris's ex-wife, Arlene Dunn ("Dunn"), owns the diner

---

[1]In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint.  See infra Part II.  The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations.

[2]The complaint alleges that the relevant events occurred on St. Patrick's Day and Mother's Day 2006.  The court takes judicial notice that these observances occurred respectively on March 17 and May 14, 2006.  FED. R. EVID. 201(b), (c).

[3]The complaint sets forth its averments in narrative prose rather than in paragraph form, as required by the Federal Rules of Civil Procedure.  See FED. R. CIV. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.").  For ease of reference, the court has sequentially numbered the paragraphs of Kalomiris's complaint from 1 through 76.  Section headings are omitted from this numbering. On page 7, the court has treated as separate paragraphs the two averments that comprise a numbered list, and the introductory phrase that precedes them has been treated as a heading.  The following table identifies the number assigned to the first paragraph on each page of complaint.

| Page | First Paragraph | Page | First Paragraph |
|------|-----------------|------|-----------------|
| 2 | ¶ 1 | 8 | ¶ 42 |
| 3 | ¶ 5 | 9 | ¶ 51 |
| 4 | ¶ 13 | 10 | ¶ 58 |
| 5 | ¶ 19 | 11 | ¶ 66 |
| 6 | ¶ 28 | 12 | ¶ 75 |
| 7 | ¶ 35 | | |

and employs Kalomiris as a cook and server.  (Id. ¶¶ 8, 13.)  Kalomiris is Dunn's sole

employee.  (Id. ¶ 18.)

A.   **The March 17, 2006 Incident**[4]

On March 17, 2006, Jennifer Ford and Jenna Fiorentino (hereinafter

collectively "Ford and Fiorentino") were driving on Route 115 near Penelope's

Diner when their car ran out of gasoline.  They maneuvered the stalled automobile

into the diner's driveway, blocking vehicular access to the parking lot.[5]  Defendant

Charles Hazen ("Hazen") arrived at the scene and identified himself as a police

officer,[6] presumably for the purpose of assisting Ford and Fiorentino.  (Id. ¶ 30.)

---

[4]Kalomiris's complaint is not a model of clarity in pleading.  The events of
March 17 and May 14 frequently appear adjacent to one another, making it difficult
to distill the precise chronology of events.  The complaint alleges the involvement of
many defendants in summary fashion, and several defendants named in the caption
appear nowhere in the factual averments.  The court's recitation of the facts has
drawn logical assumptions from the alleged events to fill the factual interstices left
vacant by the complaint.

[5]The facts contained in this sentence and the sentence immediately
preceding it do not appear in the complaint, which mentions Ford and Fiorentino
in only two paragraphs.  The first states, *in toto*:  "Respondents:  Jennifer Ford and
Jenna Fiorentino . . . on the first occasion [Saint Patrick's Day, 2006] – and then,
Martha and Joseph Miller [Mother's Day, 2006]."  (Doc. 1 ¶ 9 (ellipsis in original)).
The second avers that "Both Jenna Fiorentino and Jennifer Ford [PA Mentors] –
who initiated The Saint Patrick's Day incident were on-the-clock at PA Mentors at
that time . . . ."  (Id. ¶ 72.)  The facts set forth in the text above derive from
Kalomiris's briefs in opposition to the motions to dismiss.  (See, e.g., Doc. 26 at 4;
Doc. 38 at 1.)  Neither Ford nor Fiorentino are party to the pending motions to
dismiss, and the court relates their conduct solely for the purpose of providing
factual background for the alleged racketeering and civil rights violations
committed by the moving defendants.

[6]It is unclear whether Hazen is actually a police officer or merely identified
himself as such.

For reasons unspecified in the complaint, Hazen requested Kalomiris's driver's license, vehicle registration, and social security number. (Id. ¶¶ 30, 39.) A tussle ensued between Kalomiris and Hazen during which Hazen radioed for assistance and Kalomiris received a laceration above his right eye. (Id.) Hazen also damaged the diner's pickup truck in an amount of approximately $1,000. (Id. ¶ 30.)

Defendant Police/Fire Captain Jeff Knitter ("Knitter") and defendant Pennsylvania State Troopers Robert Cuvo ("Cuvo") and Karri Dodson ("Dodson") responded to the diner. (Id. ¶¶ 31, 41, 48-49.) Cuvo parked his police cruiser in the driveway, further obstructing access to the restaurant. (Id. ¶ 41.) Kalomiris asked Cuvo to move his automobile, and Cuvo initially refused until Kalomiris and Dunn called the police barracks to request that he be instructed to do so. (Id. ¶¶ 42, 44.) Police dispatchers apparently relayed the request, and Cuvo moved the vehicle. (Id. ¶ 45.) While at the diner, Cuvo purportedly demanded Kalomiris's driver's license and social security number. (Id. ¶¶ 46-48.) Kalomiris provided the former but refused to divulge the latter. As a result, Cuvo allegedly informed him that he would receive a citation for disorderly conduct as a result of his conduct during the incident. (Id. ¶ 49.) Dodson also participated in the incident, ordering Kalomiris to "shut up" on several occasions. (Id. ¶¶ 48-49.) At some point, Knitter allegedly assaulted Kalomiris, causing unspecified injuries. (Id. ¶ 31.) Kalomiris avers that he remained calm throughout these events and did not provoke any of defendants. (Id. ¶¶ 22, 27, 40, 43.)

### B.   The May 14, 2006 Incident

Misfortune again beset Penelope's Diner on the evening of May 14, 2006, when defendant spouses Martha and Joseph Miller (hereinafter respectively "Martha" and "Joseph") and their family were finishing a meal at Penelope's Diner with Joseph's mother, Frances Miller ("Frances").[7]  (Id. ¶ 51.)  Near the end of the meal, Frances began to choke while drinking water.  (Id. ¶ 56.)  Martha, a registered nurse, directed Joseph to call 911 while she positioned Frances on the floor with the elder woman's head between her knees.  (Id. ¶¶ 57-58.)  Joseph reported the emergency and retreated to the parking lot to signal the soon-to-arrive ambulance. (Id.)

Kalomiris noticed the developing emergency as Martha was moving Frances to the floor.  He was aware that Frances, a regular patron at Penelope's Diner, occasionally had difficulty swallowing liquids.  (Id. ¶ 54.)  Upon noticing Frances's distress, he attracted Dunn's attention by shouting, "Do the Wilma," a code phrase

---

[7]Frances Miller's forename is not contained in the complaint, which identifies her simply as "Grandma."  (Doc. 1 ¶ 54.)  The court has gleaned her full name from transcripts of Kalomiris's criminal proceedings in state court, which he has attached to his briefs in opposition to the motions to dismiss.  (Doc. 41, Exs. 1-3.) The court may consider documents of record and exhibits submitted by the parties when evaluating a motion to dismiss.  See Tilbury v. Aames Home Loan, 199 F. App'x 122, 125 (3d Cir. 2006) (quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994)).  The court will consider these transcripts for the limited purposes of describing the outcome of Kalomiris's criminal proceedings and identifying the individuals who participated in them.  See infra notes 8-14 and accompanying text.

suggesting that Dunn move Frances to a lateral position.  (Id. ¶ 59.)  Dunn followed

the suggestion, and water flowed from Frances's mouth.  (Id.)

Emergency personnel arrived on the scene as Frances was recuperating.  (Id.

¶ 60. )  An emergency medical technician ("EMT") measured her blood pressure

while another attempted to move a stretcher into the restaurant.  (Id. ¶ 61.)  The

doorway was not wide enough to accommodate the stretcher, and the EMT cracked

the diner's entrance window while attempting to force it inside.  (Id.)  For reasons

unspecified in the complaint, one of the EMTs then allegedly "grabbed [Kalomiris]

by his apron, dragged him outside, and began punching, battering . . . and

assaulting him."  (Id. ¶ 62 (ellipsis in original); see also id. ¶ 65.)  The EMTs vacated

the premises after verifying that Frances was not in immediate danger.

### C.    Kalomiris's Criminal Proceedings

Kalomiris received two disorderly conduct citations for his conduct during

the March 17 and May 14 incidents.  (Id. ¶ 66.)  Cuvo issued the first citation, and

Dodson issued the second.[8]  (Id. ¶ 49; Doc. 38, Ex. C.)  The complaint is unclear

---

[8]The complaint does not allege that police responded to the diner during the
May 14 incident.  Nevertheless, the complaint and court dockets associated with
Kalomiris's state criminal proceedings, available on the website of the Pennsylvania
courts at http://ujsportal.pacourts.us, indicate that Dodson cited him for the May 14
incident.  See Docket, Commonwealth v. Kalomiris, No. NT-0000337-06 (Pa. Magis.
Dist. Ct. 43-2-02) (noting that Dodson issued a citation for disorderly conduct on
May 20, 2006 associated with the May 14 incident) [hereinafter "No. NT-0000337-
06"].  The court takes judicial notice of all dockets cited herein for purposes of the
dismissal analysis.  See FED. R. EVID. 201(c), (f); Cooper v. Pa. State Att'y Gen., No.
2:06cv1332, 2007 WL 2492726, at *2 (W.D. Pa. Aug. 30, 2007) (reiterating that a
federal court may take judicial notice of court records and dockets).

6

about the precise nature of the ensuing criminal proceedings but alleges that the

participants therein exhibited bias against him.  It describes the criminal

prosecution as follows:

> Magistrates York and Muth . . . and Judge Linda Wallach Miller, as
> well as Assistant District Attorney Matthews[,] exceeded their
> authority and used threats and abusive, intimidating actions, and
> prejudicial conduct towards this Complainant by maliciously
> constructing false statements that seriously alleged that he was well-
> known within the system [their "*just us*" system].
>
> Also, Justice Muth and Judge Miller used threats and judgement [sic]
> based upon neither law nor facts, and held this Complainant up to
> public ridicule and humiliation throughout The Poconos.
>
> In essence, this Complainant clearly became just another one of their
> needed dupes slated for selective enforcement and selective
> prosecution - above and beyond their authority . . . as well as the
> existing statutes would dare allow.
>
> * * *
>
> Additionally:  This Complainant has subsequently been unjustly cited
> with "*disorderly conduct*" . . . which he certainly did not commit, and
> tried unsuccessfully to fight this false indictment in Magistrate's
> court - resulting in only being further victimized by District Justice
> Michael Muth.

(Doc. 1 ¶¶ 25-27, 66 (all emphasis, brackets, and ellipses in original except first

alteration and notation of "[sic]")).

The state court criminal dockets bring clarity to these allegations.  The

March 17 and May 14 charges against Kalomiris were originally assigned to

non-defendant Magisterial District Judge JoLana Krawitz and defendant

Magisterial District Judge Debby A. York ("Judge York"),[9] both of whom recused

due to potential conflicts of interest.[10]  Both cases were reassigned to defendant

Magisterial District Judge Michael R. Muth ("Judge Muth"), who presided over

separate trials for each charge on July 24, 2006.  (Doc. 41, Exs. 1-2.)[11]  Defendant

Assistant District Attorney Mark Matthews ("Attorney Matthews") appeared for the

Commonwealth, and Kalomiris proceeded *pro se*.  (Id.)  He was convicted of

disorderly conduct in both proceedings.  (Doc. 1 ¶¶ 22, 28, 66; Doc. 41, Ex. 1 at 141;

Doc. 41, Ex. 2 at 104.)

Kalomiris then filed a summary appeal with the Monroe County Court of

Common Pleas, where defendant George Warden ("Warden") is the Clerk of Court.

(Doc. 1 ¶ 17.)  Judge Linda Wallach Miller ("Judge Wallach Miller") presided over

the appeal.[12]  (Doc. 41, Ex. 3.)  Attorney Matthews again represented the

---

[9]Though the complaint identifies these individuals as "District Justices" or "Justices," their proper title is Magisterial District Judge.  See Statues—District Justices—Name Change, 2004 Pa. Legis. Serv. Act 2004-207, § 28(1) (Purdon's).

[10]See Docket at 2, Commonwealth v. Kalomiris, No. CP-45-MD-0000117-2006 (Pa. Ct. Com. Pl. Monroe County) (documenting recusal of Judge York from proceedings associated with the May 14 incident and reassignment to Judge Muth); Docket at 2, Commonwealth v. Kalomiris, No. CP-45-MD-0000107-2006 (Pa. Ct. Com. Pl. Monroe County) (documenting same with respect to Judge Krawitz and the March 17 incident).

[11]See also Docket, Kalomiris, No. NT-0000337-06; Docket, Commonwealth v. Kalomiris, No. NT-0000303-06 (Pa. Magis. Dist. Ct. 43-2-02).

[12]See also Docket at 1, Commonwealth v. Kalomiris, No. CP-45-SA-0000084-2006 (Pa. Ct. Com. Pl. Monroe County) [hereinafter "No. SA-0000084"]; Docket at 1, Commonwealth v. Kalomiris, No. CP-45-SA-0000083-2006 (Pa. Ct. Com. Pl. Monroe County) [hereinafter "No. SA-0000083"].

Commonwealth, and Kalomiris retained a private attorney, defendant Christopher O'Donnell ("Attorney O'Donnell"), to represent him.  (Doc. 1 ¶ 29.)  On September 20, 2006, the court found Kalomiris guilty of the disorderly conduct charge arising from the May 14 incident, for which he was fined $300 in addition to court costs.  (Doc. 41, Ex. 3 at 1, 36.)[13]  All charges associated with the March 17 incident were dismissed.  (Doc. 31 at 5; Doc. 41, Ex. 3 at 37.)[14]  At the conclusion of proceedings, Attorney O'Donnell allegedly informed Kalomiris that "he was doomed from the very beginning."  (Doc. 1 ¶ 29.)

### D.   Procedural History

Kalomiris commenced the instant matter on March 24, 2008 by filing a complaint with this court.  He alleges that all defendants, including eight against whom the complaint lodges no factual averments, are members of a conspiracy that he has denominated "The Monroe County Syndicate."  (Id. ¶¶ 4, 74.)  The complaint advances claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO" or "the Act"), 18 U.S.C. §§ 1961-1968, and for violations of constitutional rights pursuant to 42 U.S.C. § 1983.  Defendants have filed six separate motions to dismiss on various grounds.  The parties have fully briefed these motions, which are now ripe for disposition.

---

[13]See also Docket at 3, Kalomiris, No. SA-0000083.

[14]See also Docket at 3, Kalomiris, No. SA-0000084.

## II.   __Standard of Review__

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief can be granted.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept as true all [factual] allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most

favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir.2007)

(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is

generally limited in its review to the facts in the complaint, it "may also consider

matters of public record, orders, exhibits attached to the complaint and items

appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran &

Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat

Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to "give the

defendant notice of what the ... claim is and the grounds upon which it rests."

Sershen v. Cholish, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26,

2007) (quoting Erickson v. Pardus, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007)).  The

plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See

FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain

statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp.

v. Twombly, 550 U.S. 544, ---, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to

allege facts sufficient to "raise a right to relief above the speculative level");

Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007).  Thus, courts should not

dismiss a complaint for failure to state a claim if it contains "enough factual matter

(taken as true) to suggest the required element. This does not impose a probability

requirement at the pleading stage, but instead simply calls for enough facts to raise

a reasonable expectation that discovery will reveal evidence of the necessary

element."  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting

Twombly, 550 U.S. at ---, 127 S. Ct. at 1965).  Under this liberal pleading standard,

courts should generally grant plaintiffs leave to amend their claims before

dismissing a complaint that is merely deficient.  See Grayson v. Mayview State

Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.

2000).

**III.**   **Discussion**

Kalomiris alleges that defendants engaged in racketeering activity and

violated his civil rights, exposing them to liability under RICO and 42 U.S.C. § 1983.

Defendants have raised numerous defenses to his claims, including *inter alia* the

statue of limitations, favorable termination rule, and prosecutorial and judicial

immunity.  Cuvo and Dodson also challenge the sufficiency of service.  The court

will first assess plaintiff's RICO claims followed by the civil rights allegations. Issues of service are addressed at the end of this memorandum.[15]

### A.   RICO Claims

RICO prohibits "any person . . . associated with any enterprise engaged in . . . interstate or foreign commerce[ from] conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The Act authorizes persons whose "business or property" has been injured to enforce RICO through private suits for money damages. Id. § 1964(c). To establish a RICO claim, a plaintiff must demonstrate: (1) "the existence of an enterprise affecting interstate commerce," (2) "that the defendant was employed by or associated with the enterprise," (3) "that the defendant participated, either directly or indirectly, in the conduct of the affairs of the enterprise," and (4) that the defendant's participation involved a pattern of at least two criminal acts of racketeering, known as "predicate acts." Bailey v. Reed, 29 F. App'x 874, 875 (3d Cir. 2002) (quoting Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1165 (3d Cir. 1989)).

The latter element of the offense requires that the defendant perform two or more crimes within the statutorily delineated list of predicate acts. See 18 U.S.C.

---

[15]Defendant Monroe County Syndicate is simply the appellation that Kalomiris has assigned to all defendants collectively. It has no legal existence apart from the defendants as individuals, and all claims against it will be dismissed without prejudice to plaintiff's right to proceed against each defendant, subject to the limitations set forth in this memorandum and order.

§ 1961(1).  A plaintiff must establish all elements of the predicate act crimes in addition to the elements enumerated within RICO.  See Warden v. McKelland, 288 F.3d 105, 114 (3d Cir. 2002) (requiring RICO plaintiff to "establish a 'pattern' of . . . predicate acts[] and demonstrate that the scheme caused injury"); Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 521-29 (3d Cir. 1998) (setting aside verdict imposing liability under § 1692(c) because plaintiffs failed to prove the defendants engaged in the alleged predicate acts).  The predicate acts must be committed by a racketeering enterprise[16] rather than by disparate and unassociated individuals, and the mere existence of predicate acts, without more, does not establish an enterprise.  United States v. Console, 13 F.3d 641, 650 (3d Cir. 1993).

In the matter *sub judice*, Kalomiris's RICO claim is irreparably deficient in at least two respects.  First, Kalamoris lacks standing to maintain a RICO action.  RICO requires that the plaintiff sustain injury to "business or property."  18 U.S.C. § 1964(c).  Personal injuries, loss of earnings, and other indirect injuries do not confer standing under RICO.  See Anderson v. Ayling, 396 F.3d 265, 270-71 (3d Cir. 2005) (upholding dismissal of the plaintiffs' RICO claims because the complaint failed to allege a direct, causal link between the plaintiff's loss of employment and the alleged racketeering activity); Genty v. Resolution Trust Corp., 937 F.2d 899, 918-19 (3d Cir. 1991) (concluding that personal injuries cannot confer standing

---

[16]RICO defines an "enterprise" as a factually interrelated association of individuals, organizations, or corporations.  18 U.S.C. § 1961(4).  No formal legal relationship is required.  Id.

under RICO).  Kalomiris contends that Penelope's Diner has lost business as a result of defendants' actions, (Doc. 1 ¶ 8); however, he avers that Dunn—who is not a party hereto—is the proprietor and sole owner of the diner, (id. ¶¶ 16-17). Defendants' actions have not jeopardized Kalomiris's employment at the diner,[17] and the complaint fails to allege any injury to a property or business that he owns. The complaint therefore contains no averment of a direct, cognizable harm to Kalomiris for which RICO provides a remedy.

Second, Kalomiris has not alleged predicate acts that demonstrate a "pattern of racketeering activity."  18 U.S.C. § 1962(c).  The complaint does not reflect either the intent or activity necessary to criminal culpability and merely raises vague, unsubstantiated allegations of collusion among defendants.  It does not allege that they perpetrated any of the predicate acts identified in § 1961(1), that they engaged in a pattern of criminal conduct, that they participated in a centralized racketeering organization, or that they conspired against Kalomiris.  Indeed, it alleges little more than a "metaphysical possibility" of relief under RICO.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Ridge at Red Hawk, L.L.C. v.

---

[17]Loss of employment may confer RICO standing if the alleged racketeering activity proximately caused the plaintiff's harm.  See, e.g., Genty, 937 F.2d at 918 n.12 ("[T]he loss of employment due to racketeering activity is injury to "business" not personal injury and so resulting loss of wages, benefits, and damage to reputation are compensable under section 1964(c)."); Magnum v. Archdiocese of Phila., No. 06-CV-2589, 2006 WL 3359642, at *3 n.3 (E.D. Pa. Nov. 17, 2006).  An attenuated or speculative relationship between the alleged racketeering activity and the plaintiff's harm cannot sustain RICO liability.  See Anderson, 396 F.3d at 270. In the instant matter, Kalomiris has not alleged any direct harm to his employment that proximately resulted from defendants' conduct.

Schneider, 491 F.3d 1174, 1177 (10th Cir. 2007)).  The complaint raises no

"'*reasonable* expectation that discovery will reveal evidence of' the necessary

element[s]" of a RICO claim.  Id. (emphasis added) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, ---, 127 S. Ct. 1955, 1965 (2007)).  All of the motions to

dismiss will be granted with respect to RICO liability.  Leave to amend will be

denied as futile in light of the frivolous nature of the RICO claim.  See Grayson v.

Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not

seek leave to amend a deficient complaint after a defendant moves to dismiss it, the

court must inform the plaintiff that he has leave to amend within a set period of

time, unless amendment would be inequitable or futile.").[18]

> ### B.   Civil Rights Claims Pursuant to 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code offers private citizens a

means to redress violations of federal law by state officials.  See 42 U.S.C. § 1983.

The statute provides, in pertinent part, as follows:

---

[18]Defendants Ford, Fiorentino, Martha Miller, Joseph Miller, Jodi Hazen, and
Charles Hazen have not filed motions to dismiss; however, the RICO claims against
these defendants are untenable for reasons identical to those discussed above.  A
court may dismiss a complaint *sua sponte* if "the complaint affords a sufficient basis
for the court's action."  Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir.
1980); McGrath v. Poppleton, 550 F. Supp. 2d 564, 577 n.26 (D.N.J. 2008); Schiffman
v. Postmaster of Phila., No. Civ.A. 95-5363, 1997 WL 602786, at *7 (E.D. Pa. Sept. 19,
1997).  The court will therefore dismiss the RICO claims against all defendants
regardless of whether they filed a Rule 12(b) motion.

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . . .

Id. Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under this section, the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

As an initial matter, it is essential to identify the potential civil rights claims arising from Kalomiris's allegations. His complaint avers that the two criminal prosecutions against him lacked merit and that defendants Hazen, Knitter, and an unidentified EMT physically assaulted him. It therefore alleges malicious prosecution claims against the defendants involved in the criminal proceedings. These defendants are as follows: Attorney Matthews, Judge York, Judge Muth, Judge Wallach Miller, Cuvo, and Dodson. Kalomiris advances excessive force claims against Hazen, Knitter, and the unidentified EMT. The complaint also names Monroe County District Attorney Elmer D. Christine ("Attorney Christine") as a defendant.[19] While it does not allege that he personally performed any action

---

[19]Christine's name appears nowhere in the complaint's substantive allegations; however, Kalomiris has alleged that "All the authorities involved:

16

against Kalomiris, the court will liberally construe the complaint as advancing a
supervisory liability claim against Attorney Christine based upon his responsibility
for overseeing Attorney Matthews.  Finally, the complaint alleges a civil conspiracy
by all defendants to maliciously prosecute Kalomiris, and it advances a claim
against Attorney O'Donnell for legal malpractice.  The latter claim arises under
state law.

Defendants rejoin these claims on several grounds.  First, the defendants
involved in Kalomiris's criminal prosecution contend that they possess immunity
from suit.  Second, Cuvo, Dodson, and Knitter raise the statute of limitations and
favorable termination rule as bulwarks against liability.  Third, O'Donnell alleges
that the complaint fails to demonstrate that he is liable as a state actor or that he
committed legal malpractice.  Fourth, all moving defendants suggest that Kalomiris
has failed to plead facts demonstrating a right to relief.  The court will address each
of these defenses in turn.

### 1.    Immunity of the Judicial and Prosecutorial Defendants

Judge York, Judge Muth, and Judge Wallach Miller (hereinafter "the judicial
defendants") contend that the doctrine of judicial immunity shields them from
liability.  Attorney Christine and Attorney Matthews (hereinafter "the prosecutorial

---

EMT's, Fire Departments, ambulance, State Troopers, Judges, [and] Monroe
County District Attorney are indeed unified, and evidently protect each other's
interests as well as[,] without question, cover for their shortcomings."  (Doc. 1 ¶ 68.)
Christine acknowledges that he is the Monroe County District Attorney identified in
the complaint.  (Doc. 17 at 2.)

defendants") raise a similar argument under the doctrine of absolute prosecutorial immunity.

### a.   **Judicial Immunity**

Judges receive absolute immunity for acts performed when discharging judicial duties.  See Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir. 2000).  A litigant may overcome the immunity only in two circumstances.  First, a judge receives no immunity for acts performed outside of his or her judicial capacity. Mireles v. Waco, 502 U.S. 9, 11 (1991).  Second, a judge is not immune from liability for actions that "though judicial in nature, [are] taken in the complete absence of all jurisdiction."  Id. at 12.  Immunity extends to all federal and state judges regardless of whether they exercise general or limited jurisdiction.  See Figueroa, 208 F.3d at 443-44 ("Irrespective of a judge's status in the hierarchy of the judicial system, the need for independence and for freedom from the threat of a suit for damages is an indispensable ingredient in the proper administration of justice."); Maher v. Renninger, No. Civ.A. 07-2979, 2008 WL 1995046, at *4 (E.D. Pa. May 7, 2008).

Turning to the instant matter, Kalomiris's claims against the judicial defendants arise from actions they performed while discharging their judicial duties.  He contends that they threatened and intimidated him during criminal proceedings, (Doc. 1 ¶ 25), and that they issued erroneous judgments[20] therein,

---

[20]Kalomiris presumably does not dispute the propriety of Judge Wallach Miller's judgment with respect to the March 17 incident, in which she dismissed the charges against him.

(id. ¶ 26).  Regardless of the veracity of these allegations, they plainly assert claims

associated with the judicial defendants' performance of their official functions

within the exercise of their jurisdiction.  Accordingly, the judicial defendants are

immune from Kalomiris's civil rights claims, and their motion to dismiss (Doc. 24)

will be granted.  Leave to amend will be denied as futile.  See Grayson, 293 F.3d at

108.

### b.  Absolute Prosecutorial Immunity

Prosecutors receive absolute immunity for acts "integral to the judicial

process," including those performed while initiating, prosecuting, and presenting a

state's case in a judicial proceeding.  Williams v. Consovoy, 453 F.3d 173, 178 (3d Cir.

2006); see also Imbler v. Pachtman, 424 U.S. 409, 431 (1976) (extending absolute

immunity to prosecutors when conducting a state's case); Hughes v. Long, 242 F.3d

121, 125 (3d Cir. 2001) (same).  The availability of immunity depends not on the

*identity or office* of the individual asserting it, but rather on the *function* served by

the act for which it is sought.  Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993);

Williams, 453 F.3d at 178 (observing that courts apply absolute prosecutorial

immunity using a functional approach that focuses on the purpose served by the

acts implicated by the plaintiff's claim).  Actions performed in the prosecutor's role

as advocate receive absolute prosecutorial immunity, as do acts performed in

preparation "for the initiation of judicial proceedings or for trial."  Buckley, 509

U.S. at 273; see also Hughes, 242 F.3d at 125 (observing that immunity covers

actions such as "initiating and pursuing a criminal prosecution and presenting the state's case in court").

Like the judicial defendants, the prosecutorial defendants are entitled to absolute immunity from Kalomiris's claims. The claims against Attorney Matthews derive from acts he performed while prosecuting Kalomiris within the duties of his public office. He is therefore immune from suit. In the absence of a constitutional violation by Attorney Matthews, the supervisory claim against Attorney Christine also fails. See City of Los Angeles v. Heller, 475 U.S. 769, 799 (1986) (concluding that supervisory or municipal liability requires an underlying constitutional violation); Dodd v. SEPTA, No. Civ.A. 06-4213, 2008 WL 2902618, at *19 (E.D. Pa. July 24, 2008) (same). The prosecutorial defendants' motion to dismiss (Doc. 17) will be granted.[21]  Leave to amend will be denied as futile. See Grayson, 293 F.3d at 108.

### 2.   Cuvo, Dodson, and Knitter's Procedural Defenses

Defendants Cuvo, Dodson, and Knitter collectively raise two procedural defenses to the complaint. Defendants Cuvo and Dodson (hereinafter "the state police defendants") defend based upon the favorable termination rule announced in Heck v. Humphrey, 512 U.S. 477 (1994). All three defendants contend that the statute of limitations bars Kalomiris's claims.

---

[21]Defendant Warden, the Clerk of the Court of Common Pleas of Monroe County, also joins the prosecutorial defendants' motion (Doc. 17) but does not seek absolute prosecutorial immunity. The court will address the claims against Warden at Part III.B.4 and note 26, infra.

a.   **Favorable Termination Rule**

In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court announced the

"favorable-termination rule," which forecloses certain § 1983 actions for plaintiffs

who have been convicted of criminal charges.  In <u>Heck</u>, the Supreme Court stated:

> [I]n order to recover damages for allegedly unconstitutional conviction
> or imprisonment, or for other harm caused by actions whose
> unlawfulness would render a conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or sentence has been reversed
> on direct appeal, expunged by executive order, declared invalid by a
> state tribunal authorized to make such determination, or called into
> question by a federal court's issuance of a writ of habeas corpus . . . .
> A claim for damages bearing that relationship to a conviction or
> sentence that has not been so invalidated is not cognizable under
> § 1983.

<u>Id.</u> at 486-87; <u>see also</u> <u>Hunt v. City of Scranton</u>, No. 06-4381, 2007 WL 1624099, *2-3

(3d Cir. June 6, 2007).

The final termination rule bars those § 1983 claims that have the effect of

impugning the underlying criminal conviction.  Hence, a civil rights plaintiff cannot

maintain a claim for malicious prosecution predicated upon a charge for which he

has pled guilty because "an award of damages [for malicious prosecution] would

necessarily imply that . . . [the] conviction and sentence were unlawful." <u>Marable v.</u>

<u>W. Pottsgrove Twp.</u>, 176 F. App'x 275, 281 (3d Cir. 2006); <u>see also</u> <u>Kadonsky v. New</u>

<u>Jersey</u>, 188 F. App'x. 81, 85 (3d Cir. 2006).  <u>Heck</u> does not restrict civil rights claims

that have no collateral effect on the underlying criminal conviction.  Such claims

include those for excessive force, unlawful search, and unlawful seizure.  <u>See</u> <u>Heck</u>,

512 U.S. at 487 n.7 ("[A] suit for damages attributable to an allegedly unreasonable

search may lie even if the challenged search produced evidence that was introduced in a state criminal trial . . . [b]ecause of doctrines like independent source and inevitable discovery."); <u>Nelson v. Jashurek</u>, 109 F.3d 142, 146 (3d Cir. 1997) (opining that the plaintiff's success on an excessive force claim would not call into doubt his criminal conviction obtained after the allegedly improper arrest).

In the present matter, Kalomiris asserts malicious prosecution claims against the state police defendants based upon the criminal citations that they issued to him.  Kalomiris was convicted before Judge Muth of disorderly conduct on both occasions; Judge Wallach Miller upheld the May 14 conviction but dismissed the March 17 charges.  Under <u>Heck</u>, a malicious prosecution claim based upon the May 14 incident would impugn the validity of his criminal conviction.  However, <u>Heck</u> does not preclude the malicious prosecution claim associated with Cuvo's March 17 citation, which ended with dismissal of all charges.  Accordingly, the state police defendant's motion (Doc. 18) will be granted to the extent that it seeks dismissal of the malicious prosecution claim against Dodson .  Leave to amend will be denied as futile.  <u>See</u> <u>Grayson</u>, 293 F.3d at 108.

### b.    <u>Statute of Limitations</u>

Defendants Cuvo and Knitter next raise the statute of limitations as a defense to the complaint.  Rule 12(b) of the Federal Rules of Civil Procedure requires that all defenses be asserted in an answer except those expressly enumerated in the rule.  <u>See</u> F<span>ED</span>. R. C<span>IV</span>. P. 12(b).  The Federal Rules do not require a plaintiff to proffer specific allegations regarding the time of the alleged offense, and Rule 12(b)

does not provide for pre-answer assertion of a limitations defense.  <u>See</u> <u>id.</u> <u>Kiewit</u>

<u>Constr., Inc. v. Franbilt, Inc.</u>, No. 07-CV-121A, 2007 WL 2461919, at *2 (W.D.N.Y.

Aug. 24, 2007) (noting that the Federal Rules "do[] not require specific allegations of

place and time, but merely state[] that when such specific allegations are made,

they are material" (quoting <u>Jones v. United Gas Improvement Corp.</u>, 383 F. Supp.

420, 436 n.2 (E.D. Pa. 1974))).  Nevertheless, a district court may dismiss a complaint

as time-barred if "the time alleged in the statement of a claim shows that the cause

of action has not been brought within the statute of limitations."  <u>Robinson v.</u>

<u>Johnson</u>, 313 F.3d 128, 135 (3d Cir. 2002) (quoting <u>Hanna v. U.S. Veterans' Admin.</u>

<u>Hosp.</u>, 514 F.2d 1092, 1094 (3d Cir. 1974)).  Civil rights claims are governed by the

state statute of limitations applicable to personal injury actions.  <u>See</u> <u>Garvin v. City</u>

<u>of Phila.</u>, 354 F.3d 215, 220 (3d Cir. 2003).  In Pennsylvania, the applicable

limitations period is two years.  <u>See</u> <u>id.</u> (citing 42 PA. CONS. STAT. § 5524(7)).  The

limitations period commences "when the plaintiff knew or should have known of

the injury upon which [the plaintiff's] action is based."  <u>Sameric Corp. of Del. v. City</u>

<u>of Phila.</u>, 142 F.3d 582, 599 (3d Cir. 1998).

    In the case *sub judice*, Kalomiris filed his complaint on March 24, 2008.  Any

claims that accrued more than two years prior to the filing thereof are barred by the

statute of limitations.  Hence, his claims fail to the extent they arise from events

that occurred before March 24, 2006.

    Knitter contends that the statute of limitations bars Kalomiris's excessive

force claim arising from his conduct on March 17, 2006, when he allegedly struck

Kalomiris with repeated blows.  This conduct occurred outside of the limitations period, and the complaint contains no averment that implicates tolling thereof.  The court will therefore grant Knitter's motion to dismiss (Doc. 14) the excessive force claim.  Leave to amend will be denied as to this claim.  See Grayson, 293 F.3d at 108.

Cuvo also invokes the statute of limitations in response to the malicious prosecution claim associated with the criminal citation that he issued to Kalomiris following the March 17 incident.[22]  However, Kalomiris's malicious prosecution against Cuvo did not accrue until Judge Wallach Miller dismissed the charges against him on September 20, 2006, well within the limitations period.  See Ginter v. Skahill, No. 06-4814, 2008 WL 4714516, at *2 (3d Cir. Oct. 28, 2008) ("Claims alleging malicious prosecution do not accrue until charges are dismissed." (citing Smith v. Holtz, 87 F.3d 108, 111 (3d Cir. 1996))).  Moreover, the criminal citation bears two filing dates.  A handwritten date indicates that it was filed on March 20, 2006 while the filing stamp from the office of the magisterial district court clerk bears a date of March 28, 2006.  (Id.)  The former date is outside of the limitations period; the latter falls within it.  Also unclear is whether Kalomiris received delayed notice of the charges, which potentially implicates issues of tolling.  Therefore, the court cannot dismiss the malicious prosecution claim against Cuvo on limitations grounds.

---

[22]Kalomiris submitted this citation as an exhibit in opposition to the motions to dismiss.  (See Doc. 38, Ex. C.)

3.     **O'Donnell's Defenses**

O'Donnell moves to dismiss the complaint, arguing that Kalomiris has failed to allege malicious prosecution, conspiracy, or legal malpractice claims against him. With respect to the federal claims, the complaint asserts that Kalomiris retained O'Donnell as a private attorney to represent him during his summary appeal to the Court of Common Pleas. Actions committed by a private attorney during the course of representation fail to qualify as state action under § 1983. See Perez v. Griffin, No. 1:06-CV-1468, 2008 WL 2383072, at *5 (M.D. Pa. June 9, 2008) ("Purely private transactions between attorneys and clients are incapable of supporting a claim for redress under § 1983."), aff'd, No. 08-2979, 2008 WL 5351829 (3d Cir. 2008).

Moreover, the allegations against O'Donnell fail to demonstrate a substantive violation of Kalomiris's civil rights. O'Donnell played no role in prosecuting Kalomiris, he was not present at the time Kalomiris received his disorderly conduct citations, and he did not participate in Kalomiris's trials before Judge Muth. O'Donnell lacks any relationship with the individuals responsible for citing and prosecuting Kalomiris. Kalomiris cannot allege any federal civil rights violation against O'Donnell based upon these facts, and the motion to dismiss will be granted insofar as it advances federal civil rights claims. Leave to amend will be denied as futile. See Grayson, 293 F.3d at 108.

The legal malpractice claim against O'Donnell is governed by state law. To state a legal malpractice claim against a criminal defense attorney, a complaint must allege (1) "[t]he employment of the attorney;" (2) "[r]eckless or wanton

25

disregard of the [plaintiff's] interest by the attorney;" (3) "'but for' the attorney's conduct, the [plaintiff] would have obtained an acquittal or a complete dismissal of the charges;" (4) "[a]s a result of the injury, the [plaintiff] suffered damages;" and, (5) the plaintiff "has pursued post-trial remedies and obtained relief based upon the attorney's error." See Bailey v. Tucker, 621 A.2d 108, 115 (Pa. 1993) (footnotes omitted).  In the instant matter, Kalomiris obtained complete dismissal of all charges arising from the March 17 incident; hence, O'Donnell's representation on these charges cannot give rise to a malpractice claim. Id.  Kalomiris was convicted for disorderly conduct during the May 14 incident, and the Court of Commons Pleas sentenced him on September 20, 2006.[23]  The period for filing a notice of appeal expired on October 20, 2006; however, no such notice appears on the docket.[24]  See PA. R. APP. P. 903(c) (creating a thirty-day period for the filing of an appeal after a sentence imposed in open court).   Therefore, Kalomiris cannot demonstrate that he "pursued post-trial remedies and obtained relief based upon the [O'Donnell's] error," Bailey, 621 A.2d at 115, and the court will dismiss the malpractice claim with prejudice.

### 4.    Sufficiency of the Complaint

All defendants challenge the adequacy of the complaint's allegations against them.  Cuvo contends that it fails to plead a malicious prosecution claim, and all

---

[23]See Kalomiris, No. SA-0000083 at 3.

[24]See Kalomiris, No. SA-0000083 at 3-4.

defendants contest the sufficiency of its allegations with respect to the § 1983 conspiracy claim.

### a.   **Malicious Prosecution Claim**

A malicious prosecution claim requires a plaintiff to demonstrate that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007); O'Malley v. Lukowich, No. 3:08-CV-0680, 2008 WL 4861477, at *7 (M.D. Pa. Nov. 7, 2008). The final element requires the plaintiff to establish impairment of the plaintiff's liberty through arrest, pretrial supervision, the posting of bail, or some other significant physical restriction. DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005); Stolinski v. Pennypacker, No. Civ.A. 07-3174, 2008 WL 5136945, at *8 (D.N.J. Dec. 4, 2008). Mere compulsory attendance at trial will not support a malicious prosecution claim. DiBella, 407 F.3d at 603.

In the instant matter, Kalomiris alleges that Cuvo filed a criminal citation against him, that the charges set forth in the citation were false, and that the charges were dismissed. He also contends that Cuvo acted out of malice, as demonstrated by Cuvo's offensive demeanor toward him on March 17, 2006. However, it is unclear from the complaint whether Kalomiris suffered a deprivation

of his liberty sufficient to support the malicious prosecution claim.  The complaint

implies that he attended a criminal trial but is silent with respect to issues such as

arrest, pretrial supervision, or bond.  Cuvo's motion to dismiss (Doc. 18) will be

granted, and Kalomiris will be permitted to file an amended complaint alleging a

deprivation of his liberty "consistent with the concept of seizure as a consequence

of a legal proceeding."  Johnson, 477 F.3d at 82.[25]

---

[25]Cuvo also moves to dismiss the complaint under the substantiality doctrine.
This doctrine authorizes dismissal of claims that are "(1) foreclosed by prior cases
which have settled the issue one way or another, (2) wholly insubstantial or
obviously frivolous, or (3) so patently without merit as to require no meaningful
consideration."  Boyle v. O'Bannon, 543 F. Supp. 66, 68 (M.D. Pa. 1982).  Courts
within the Third Circuit have exercised considerable restraint when applying the
doctrine, dismissing only claims that are untenable in light of existing case law or
that are of such a fantastical nature as to be utterly implausible.  For example, the
only Third Circuit case upholding dismissal under the doctrine's frivolity elements
involved a prisoner who alleged that prison officials had attempted to serve human
flesh at a meal and that Muslim inmates, prison unions, and prison employees had
conspired to abuse Caucasian Christian inmates.  See Allen v. Am. Fed'n of Gov't
Employees, 276 F. App'x 197, 199 (3d Cir. 2008).  In the instant case, Kalomiris's
filings are riddled with insulting and hyperbolic language; however, the alleged
constitutional torts of malicious prosecution and conspiracy are not so facially
meritless that they warrant dismissal for lack of substantiality.

### b.   <u>Section 1983 Conspiracy Claim</u>

Cuvo, Dodson, Knitter, Warden,[26] Kerry Knapp, Jackie Wentzel, William

Koehler, Robert Laudenslager, Richard H. Salter, III, and Robin Costenbaden[27]

move to dismiss the § 1983 conspiracy claim.  A conspiracy claim requires the

plaintiff to demonstrate that multiple individuals, at least one of whom is a state

actor "reached an understanding to deny [the plaintiff] his rights under § 1983."

<u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 185 (3d Cir. 1993); <u>see also</u> <u>Adickes v. S.H. Kress &

Co.</u>, 398 U.S. 144, 152 (1970); <u>Limehouse v. Delaware</u>, 144 F. App'x 921, 923 (3d Cir.

2005).  The plaintiff must plead the facts of the conspiracy with particularity,

identifying the precise conduct giving rise to the claim.  <u>Houghton v. Dauphin

County Emergency Mgmt. Agency</u>, No. 1:07-CV-0315, 2007 WL 1200133, at *3 (M.D.

Pa. April 30, 2007).  "Sufficiently particularized pleadings will include '(1) the period

of the conspiracy, (2) the object of the conspiracy, and (3) certain actions of the

alleged conspirators taken to achieve that purpose.'"  <u>Id.</u> (quoting <u>Aguilar v. Pa.

Apply Mktg Prog.</u>, No. 1:05-CV-0804, 2006 WL 167820, at *5 (M.D. Pa. Jan. 19, 2006)).

Vague or conclusory allegations of collusion are insufficient to plead a conspiracy

---

[26]Warden invokes qualified immunity as a complete defense to liability.
However, the complaint merely identifies Warden as the clerk of court for Monroe
County.  (Doc. 1 ¶ 17.)  It does not allege any conduct by Warden rendering him
amenable to suit.  Absent greater factual clarity, the court cannot ascertain the
viability of a qualified immunity defense at this initial stage of proceedings.  This
issue is therefore appropriately reserved to a later phase of litigation, when the
court can assess it in light of a mature factual record.

[27]With the exception of Cuvo, Dodson, Knitter, and Warden, these defendants
appear nowhere in the factual averments of the complaint.

claim.  Concert v. Luzerne County Children & Youth Servs., No. 3:CV-08-1340, 2008

WL 4753709, at *2 (M.D. Pa. Oct. 29, 2008).

In the instant matter, the complaint avers a conspiracy in perfunctory

format.  It does not delineate an express agreement, nor does it proffer facts

demonstrating the existence of an implied agreement.  It depicts defendants as a

disparate association of individuals related to one another solely through their

interactions with Kalomiris.  His allegations do not reflect shared collusive scienter

among them, and the conspiracy claim fails as a result.  Despite these defects,

"allegations [that] lack the requisite particularly generally warrant[] the

opportunity for amendment."  Houghton, 2007 WL 1200133, at *3 (citing Freedman

v. City of Allentown, 853 F.2d 1111, 1115 (3d Cir. 1988).  The court will therefore

grant Kalomiris leave to filed an amended complaint that describes with

particularity the facts upon which Kalomiris alleges a conspiratorial agreement and

the acts that defendants performed in furtherance thereof.[28]

### C.    Sufficiency of Service

The state police defendants challenge the sufficiency of service of process.

According to the docket in this matter, Kalomiris has also failed to perfect service

on defendants Charles and Jodi Hazen.  The court raises the service issue with

respect to the latter defendants *sua sponte*.  See FED. R. CIV. P. 4(m).

---

[28]Kalomiris's amended pleading shall comply with Rule 10(b), which requires
allegations to appear in numbered paragraphs, each limited to a single set of
circumstances.  See FED. R. CIV. P. 10(b).

### 1.   <u>Service on the State Police Defendants</u>

Rule 12(b)(5) permits dismissal when the plaintiff has failed to effect service of process in a fashion compliant with Rule 4.  Under Rule 4, a plaintiff must arrange for personal service of a summons and complaint upon each defendant unless the defendant waives service.[29]  <u>See id.</u> R. 4(c)(1), (2); 4(d); 4(e).  The plaintiff *must* arrange for personal service in the absence of a waiver, and service *must* be performed by "[a]ny person who is at least 18 years old and not a party" to the action.  <u>Id.</u> R. 4(c)(2).

The plaintiff may seek a waiver of service from the defendant by transmitting a waiver request via first class mail.[30]  <u>Id.</u> R. 4(d)(1).  If the defendant executes the waiver, the plaintiff must file it with the court and is excused from effectuating personal service.  <u>Id.</u> R. 4(d)(4).  A defendant who refuses to execute the waiver is entitled to receive personal service of process but must reimburse the costs that the plaintiff incurs in performing it.  <u>Id.</u> R. 4(d)(2).  If a plaintiff fails to serve process as set forth in Rule 4, a court possesses discretion either to dismiss the complaint or to

---

[29]Rule 4(e) establishes the means through which a plaintiff may perform personal service of process.  The rule allows a plaintiff to serve the complaint in any manner authorized by the "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  In Pennsylvania, Rules 400-430 of the Pennsylvania Rules of Civil Procedure govern service of process.  Rule 4(e) also allows the plaintiff to serve process by arranging for personal delivery, by leaving it with someone of suitable age at the defendant's home, or by delivering it to the defendant's authorized agent for service of process.  <u>Id.</u> R. 4(e)(2).

[30]The request must contain all information enumerated in Rule 4(d)(1).

quash service and grant plaintiff additional time to serve the summons and

complaint.  See Mitchell v. Theriault, 516 F. Supp. 2d 450, 457 (M.D. Pa. 2007); see

also FED. R. CIV. P. 4(m).  "However, dismissal of a complaint is inappropriate when

there exists a reasonable prospect that service may yet be obtained.  In such

instances, the district court should, at most, quash service, leaving the plaintiff[]

free to effect proper service."  Mitchell, 516 F. Supp. 2d at 457 (quoting

Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992)).

In the instant matter, Kalomiris served the complaint on Cuvo and Dodson

via certified mail, which is an improper method of service.  (Doc. 1 at 13.)  Kalomiris

has not secured a waiver of service for these defendants, and no indicia of personal

service appears on the docket.  The court will quash service with respect to Cuvo

and Dodson and grant Kalomiris an additional forty-five days within which to serve

these defendants.  In the event that he is unable serve process within this period, he

may request an extension of the service period upon a showing of good cause.  See

FED. R. CIV. P. 4(m).  Failure to serve the complaint properly may result in dismissal

of the claims against Cuvo and Dodson.  See id.

### 2.   Service on Defendants Charles and Jodi Hazen

Rule 4(m) requires the plaintiff to serve each defendant within 120 days of the

filing of the complaint.  Unless the defendant waives service, the plaintiff must file

proof of service upon completion thereof.  See id. R. 4(*l*)(1).  If the plaintiff fails to

serve the defendant, the court may dismiss the claims after notifying the plaintiff

and providing him or her with an opportunity to "show[] good cause for the failure." Id. R. 4(m).

In the present matter, Kalomiris filed the complaint, which included defendants Charles and Jodi Hazen, on March 24, 2008.  The Clerk of Court issued summons against all defendants the following day.  As of the date hereof, defendants Charles and Jodi Hazen have not waived service, nor has Kalomiris submitted an affidavit stating that he has served the complaint.  The complaint reflects that the Hazens have received process via certified mail, (see Doc. 1 at 13), which constitutes an improper means of service under Rule 4, see supra Part III.C.1.  The court will require Kalomiris to show cause within thirty days why the claims against them should not be dismissed.  See FED. R. CIV. P. 4(m).[31]  Failure to show good cause will result in dismissal of the claims against the Hazens.

---

[31]When responding to the court's order, Kalomiris must show cause why *he* has failed to comply with the service provisions of Rule 4.  Many of Kalomiris's filings submitted to date simply reaffirm the merits of his substantive claims. Plaintiff is advised that mere reiteration of his claims against the Hazens will not establish good cause for failure to serve the complaint.  When responding, plaintiff *must* state the reasons why *he* has failed to comply with applicable provisions of the Federal Rules of Civil Procedure.  See McNeil v. United States, 508 U.S. 106, 113 (1996) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); Nguyen v. ATM Corp. of Am., No. 2:08-CV-531, 2008 WL 5003459, at *1 (W.D. Pa. Nov. 21, 2008) ("[Unrepresented plaintiffs] must understand that even though [they are] proceeding pro se, [they are] still required to comply with all of the applicable procedural rules, including the Federal Rules of Civil Procedure, the Local Rules of Court and the chambers practices.").

**IV.**   **Conclusion**

The RICO claims against all defendants will be dismissed.  In addition, the

court will dismiss all claims against the Monroe County Syndicate; against Judges

York, Muth, and Wallach Miller; and against Attorneys Matthews, Christine, and

O'Donnell.  The excessive force claim against Knitter and the malicious prosecution

claim against Dodson will likewise be dismissed.  Leave to amend will be denied as

futile with respect to all of these claims.

The malicious prosecution claim against Cuvo and the § 1983 conspiracy

claim against Knitter, Cuvo, Dodson, Warden, Knapp, Wentzel, Koehler,

Laudenslager, Salter, and Costenbaden will be dismissed.  The court will grant

Kalomiris until forty-five days to file an amended complaint against these

defendants, subject to the limitations set forth in this memorandum and order.

Service on Cuvo and Dodson will be quashed, and Kalomiris will receive an

additional forty-five days within which to effectuate service in a manner consistent

with Rule 4.  He will also be required to show cause within thirty days why the

claims against Charles and Jodi Hazen should not be dismissed.

An appropriate order follows.


 S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:        January 8, 2009

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANASTASIOS [TOMMY]** | : | **CIVIL ACTION NO. 1:08-CV-0539** |
| **KALOMIRIS,** | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THE MONROE COUNTY** | : | |
| **SYNDICATE, ELMER D.** | : | |
| **CHRISTINE, JR., DEBBY YORK,** | : | |
| **JENNIFER FORD, JENNA** | : | |
| **FIORENTINO, JODI HAZEN,** | : | |
| **CHARLES HAZEN, KERRY KNAPP,** | : | |
| **JACKIE WENTZEL, ROBERT** | : | |
| **CUVO, JR., KARRI DODSON,** | : | |
| **MICHAEL R. MUTH, MARK** | : | |
| **MATTHEWS, WILLIAM KOEHLER,** | : | |
| **ROBERT LAUDENSLAGER,** | : | |
| **RICHARD H. SALTER, III, MARTHA** | : | |
| **MILLER, JOSEPH, MILLER, JEFF** | : | |
| **KNITTER, ROBIN COSTENBADEN,** | : | |
| **LINDA WALLACH MILLER,** | : | |
| **CHRISTOPHER J. O'DONNELL, and** | : | |
| **GEORGE WARDEN,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 8th day of January, 2009, upon consideration of the motions

to dismiss (Docs. 9, 11, 14, 16, 18, 24), and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1.  All claims against the Monroe County Syndicate are DISMISSED.
    Leave to amend is denied as futile.  <u>Grayson v. Mayview State Hosp.</u>,
    293 F.3d 103, 108 (3d Cir. 2002).

2.      The motion to dismiss (Doc. 9) filed by Kerry Knapp, Jackie Wentzel, William Koehler, Robert Laudenslager, Richard H. Salter, III, and Robin Costenbaden, is GRANTED as follows:

   a.      The motion is GRANTED with respect to the claims filed under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961-1968.  Leave to amend is denied as futile.  Grayson , 293 F.3d at 108.

   b.      The motion is GRANTED with respect to the conspiracy claim filed under 42 U.S.C. § 1983.  Leave to amend is granted in accordance with Paragraph 9.

3.      The motion to dismiss (Doc. 11) filed by Christopher O'Donnell is GRANTED with prejudice with respect to all claims.

4.      The motion to dismiss (Doc. 14) filed by Jeffrey Knitter is GRANTED as follows:

   a.      The motion is GRANTED with respect to the RICO and excessive force claims against Knitter.  Leave to amend is denied as futile.  See Grayson, 293 F.3d at 108.

   b.      The motion is GRANTED with respect to the conspiracy claim filed under § 1983.  Leave to amend is granted in accordance with Paragraph 9.

5.      The motion to dismiss (Doc. 16) filed by Elmer D. Christine, Jr., Mark Matthews, and George Warden, is GRANTED as follows:

   a.      The motion is GRANTED with respect to (i) all claims against Elmer D. Christine, Jr. and Mark Matthews and (ii) the RICO claim against George Warden.  Leave to amend is denied as futile.  See Grayson, 293 F.3d at 108.

   b.      The motion is GRANTED with respect to the conspiracy claim against George Warden filed under § 1983.  Leave to amend is granted in accordance with Paragraph 9.

6.    The motion to dismiss (Doc. 18) filed by Karri Dodson and Robert
      Cuvo is GRANTED as follows:

      a.    The motion is GRANTED with respect to (i) the RICO claims
            against Karri Dodson and Robert Cuvo and (ii) the malicious
            prosecution claim against Karri Dodson.  Leave to amend is
            denied as futile.  See Grayson, 293 F.3d at 108.

      b.    The motion is GRANTED with respect to (i) the malicious
            prosecution claims against Robert Cuvo and (ii) the conspiracy
            claim filed under § 1983 against Robert Cuvo and Karri Dodson.
            Leave to amend is granted in accordance with Paragraph 9.

7.    The motion to dismiss (Doc. 24) filed by Debby York, Michael R. Muth,
      and Linda Wallach Miller is GRANTED with prejudice with respect to
      all claims.  Leave to amend is denied as futile.  See Grayson, 293 F.3d
      at 108.

8.    The RICO claims against defendants Jennifer Ford, Jenna Fiorentino,
      Martha Miller, Joseph Miller, Jodi Hazen, and Charles Hazen are
      DISMISSED with prejudice.  See Bryson v. Brand Insulations, Inc.,
      621 F.2d 556, 559 (3d Cir. 1980).  Leave to amend is denied as futile.
      See Grayson, 293 F.3d at 108.

9.    Plaintiff shall be permitted to file an amended complaint on or before
      February 23, 2009 for purposes of alleging the following:

      a.    A deprivation of his liberty consistent with the concept of a
            seizure as a consequence of his criminal proceeding sufficient to
            plead a malicious prosecution claim against Robert Cuvo.

      b.    The existence of agreement to effect a deprivation of plaintiff's
            rights under federal law sufficient to plead a conspiracy claim
            against Robert Cuvo, Karri Dodson, Kerry Knapp, Jackie
            Wentzel, William Koehler, Robert Laudenslager, Richard H.
            Salter, III, Jeff Knitter, Robin Costenbaden, and George
            Warden.

3

10.    Service of the summons and complaint upon Robert Cuvo and Karri Dodson is QUASHED.  On or before February 23, 2009, plaintiff shall effectuate service upon these defendants in a manner consistent with Rule 4 of the Federal Rules of Civil Procedure.  Failure to effect service may result in dismissal of the claims against these defendants.  <u>See</u> FED. R. CIV. P. 4(m).

11.    On or before February 6, 2008, plaintiff shall SHOW CAUSE why the claims against Charles Hazen and Jodi Hazen should not be dismissed for failure to effect service.  <u>See</u> FED. R. CIV. P. 4(m).  The claims against these defendants will be dismissed absent a showing of good cause.

<u> S/ Christopher C. Conner   </u>
CHRISTOPHER C. CONNER
United States District Judge